## Erb *versus* Erb.

*Obstruction of right of way.—Effect of consentable location of gate in private way.*

1. Where a gate across a way, located in 1845, by adjoining landowners, upon the agreement by one of them that he would keep it in repair if it was allowed to remain where it was then placed, was, in 1863, by the son and grantee of the other, removed to another and less convenient location: in an action to recover damages for the removal: *held* that the plaintiff was not bound, after proving the agreement, to show that he had kept the gate in repair: but that the defendant was bound to do so in order to justify the removal.

2. Hence it was error to instruct the jury that if they found that the agreement had been made, yet unless the plaintiff had kept the gate in repair, his promise to do so did not make the contract binding.

ERROR to the Common Pleas of *Lancaster county.*

This was an action of trespass on the case by Jacob Erb, to recover damages for interrupting him in his right of way over the land of the defendant, John Erb.

The right of way was admitted, and the question was whether he was disturbed in that right.

Two gates had been kept and maintained for many years across this way, one where it issued into the public road, and the other it entered the defendant's land at or near the bank of a creek where which constituted the line between the parties.

In August 1863, the defendant moved the latter gate some twelve or fifteen feet nearer the creek than it had been, thereby, as was alleged, subjecting plaintiff to great inconvenience and damage, as the gate in its new position stood close to the edge of the creek, the waters of which flowed under and around it.

Plaintiff contended that the gate had stood where it was before the removal from time out of mind, while the defendant insisted that about eighteen years previous it was moved from the creek, and that the recent removal only restored it to its old position. Both parties supported these views with much conflicting testimony. The plaintiff also gave evidence of an agreement between himself and Ephraim Erb (under whom defendant claimed), that the plaintiff should keep this gate in repair and Ephraim Erb the other gate, and that this gate should remain where it then was. This was proved by Levi Miller, thus:—

"I was present some years ago when a division of fences was made between Ephraim and Jacob Erb. Ephraim took the part where the gate was in; they measured around the fence; the gate and the fence down measured into Ephraim's half. Ephraim said he would rather that Mr. Erb would keep up the gate. Ephraim said he would keep the gate at the race (at the public road), and

[Erb v. Erb.]

Jacob should keep the other. Jacob said he would keep the gate, but it should stay where it was. Ephraim said yes."

There was no proof that the gate ever required repair, or that the plaintiff refused or neglected to repair it, or had been called upon to do so.

The plaintiff requested the court to charge the jury that,

1. The defendant had no right to erect a gate across the private way of the plaintiff, without his consent, at any point where none before existed, if such erection subjected the plaintiff to inconvenience.

2. If the plaintiff and Ephraim Erb (under whom defendant holds title) agreed that the gate should remain where it was before moved, the defendant had no right to remove it to another point on the private way without the consent of the plaintiff.

3. The defendant had no right to erect a gate upon the private way at any point, where it caused the plaintiff more inconvenience than he had experienced for twenty-one years before suit brought.

The court charged the jury as follows :—

" The plaintiff claims damages from defendant for interrupting him in his right of way over the land of the defendant. It is admitted by him, that the plaintiff has a right of way over his ground, and the only question for your determination is, was he disturbed in that right by the defendant. Much testimony has been given on behalf of the plaintiff to establish that fact, as well as on behalf of the defendant to negative that allegation, and the testimony is somewhat in conflict; it will be your duty to reconcile, if you can, the apparent inconsistency existing in regard to that testimony, and if unable to do so, to give most credence to those witnesses, who, from their opportunities and other circumstances, are most likely to be correct in their statements. The difficulty about this case arises from the removal of a gate which extended across the way, over which the plaintiff has a right. It has been shown to you that some time last August a year, the defendant had removed a certain gate, from where it then stood, to about twelve or fifteen feet nearer the creek, thereby, as the plaintiff asserts, subjecting him in the use of the road to much more inconvenience than before, and impeding his former use of the road; that this gate was removed at that time is well established by the testimony. The defendant, however, to meet this charge, says, that where the gate now stands, and which is the subject of the complaint, is the place where it originally stood, and had stood for more than twenty-one years before it was taken to the place from which it was last taken, and that the gate that was thus removed in August 1863, did not stand at the place twenty-one years from which it was then removed; and that in thus removing it, it was only replacing the. gate where it formerly stood, and in support of this position some evidence has been given; you must judge of the effect of it. It is said that the testimony proves, that near where one of the posts of the present

[Erb *v.* Erb.]

gate stands, there was an old post which was cut down, with hooks on one side and holes for rails on the other; and on the other side of the way there is a stump of a post over which the present gate hangs, and also that there was a stump of a tree, which was near the old gate and against which they say the old gate swung when opened, and to which the present one reaches when opened. These posts and stumps the defendant says are relics of the old gate that preceded the present one, and are coincidences showing the correctness of their view.

"The plaintiff meets this by saying, that this is not a correct view of the matter; that it is contradicted by the witnesses on their part, who prove that there was a neck of land up to the old gate of about a panel of fence on the upper side, and four panels on the lower, which is not the case now; that on the upper side of the gate connects with the fence running along the creek, and on the lower side there are not more than three panels instead of four as formerly. The defendant in reply answers that this was occasioned by the washing of the banks of the creek, and to corroborate this view they gave in evidence the existence of a stump of a tree, now standing in the water, the tree which some of the witnesses say stood on dry land a few years since. It is also alleged that this change in the water is occasioned by a fish-dam owned by the plaintiff, and the manner in which his cattle make use of the water of the creek; you will recollect the testimony upon this subject. If the gate was removed from a place where it had not stood for twenty-one years to a place where another had stood for that period before, without subjecting the plaintiff to more inconvenience or damage than the gate which stood there before would have subjected the plaintiff to, he cannot recover damages. But if the gate which was removed, stood at the place for twenty-one years, such gate could not be removed; or even if the defendant had a right to remove the gate to where it is now, and in the erection of the present gate he subjected the plaintiff to more inconvenience than he would have been subjected to by the former old gate, if any stood there as is alleged for upwards of twenty-one years, and of which the present one is the representative, the plaintiff will be entitled to damages for the injury or inconvenience which he has thus sustained. With regard to the agreement spoken of by one of the witnesses that the gate which was removed, should remain as it stood, I have referred to it in my answer to one of the plaintiff's points."

In answer to plaintiff's points the court said:—"1 and 3. If the plaintiff has established to your satisfaction by the testimony the fact that the gate, which is now the subject of dispute, was located at a certain point for twenty-one years, and after the gate had been thus located for that period, it was removed and changed, and by such change the plaintiff was subjected to any inconve-

[Erb *v.* Erb.]

nience, or to the smallest appreciable injury, the plaintiff will be entitled to your verdict for such damages or inconvenience to which he may have been subjected. But if the gate was not fixed for twenty-one years at that place, the plaintiff has no right to claim damages from the defendant for removing the gate to a place where it had stood before for twenty-one years, unless by the erection of such gate, he made such alteration or change in its former position as subjected the plaintiff to inconvenience, or the least degree of damage, to which he was not subjected to by the old gate, and in the language of the plaintiff's third point, The defendant had no right to erect a gate upon the private way at any point, where it caused the plaintiff more inconvenience than he had experienced for twenty-one years before suit brought.

" 2. If the plaintiff and Ephraim Erb agreed upon a sufficient consideration, that the gate should remain at a certain point, it would be binding upon them; but unless Jacob Erb actually consummated his agreement (if you believe that there was an agreement between him and Ephraim Erb, under whom the defendant claims) and kept the gate in repair, the mere promise on his part to keep the gate in repair, would not be sufficient to make the contract binding."

Under these instructions there was a verdict and judgment in favour of defendant. This writ was then sued out by the plaintiff, who assigned for error the answer given to the plaintiff's second point.

*N. Ellmaker* and *I. E. Hiester*, for plaintiff in error.—The plaintiff, having acquired a right of way over the land of defendant, was entitled to enjoy it without embarrassment or diminution. As two gates had always subsisted across the way, the right was unquestionably subject to the continuance of those two gates. And if the site and position of the gates were fixed by the acts or agreement of the owners of the properties, the gates could not be moved by either, without the consent of the other. The effect was the same upon the successor in title of either owner, with notice: Greenawalt *v.* Horner, 6 S. & R. 71; Campbell *v.* McCoy, 7 Casey 263; Hagey *v.* Detweiler, 11 Id. 409; Brown *v.* Caldwell, 10 S. & R. 114; McKellip *v.* McIlhenny, 4 Watts 317; Mills *v.* Buchanan, 2 Harris 59; Lacy *v.* Arnett, 9 Casey 169.

According to the defendant's own theory and showing, the gate in question was located by a former owner of defendant's land (his father) at the place from which it was shifted. This was when, as defendant contends, the gate was moved in 1845. It is to be presumed that this arrangement was made with consent of the plaintiff, and that the site of the gate was adopted and approved by both parties. And after the owner of defendant's land had selected a place for the gate, which was acquiesced in by the

[Erb *v.* Erb.]

plaintiff, could the defendant move the gate at his pleasure, against the will of the plaintiff? But we proved an express agreement of the owners of the land some years ago, that the gate should remain where it then was. The agreement was made at a division of fences, and the plaintiff assumed the maintenance of this gate, on condition that the site should not be changed. Was not this agreement binding on both parties and their successors? The court below admit that it was, if actually consummated by the plaintiff. That is, that the agreement was not obligatory, unless or until the plaintiff actually repaired the gate. Was not the contract binding from the time it was made, and does not the law furnish ample remedy to enforce the obligations of both parties?

In the present case there was no evidence that the gate required repair, or that the plaintiff neglected or refused to repair it. Then why may he not insist on the agreement of defendant's predecessor in title that the gate should remain where it was? " A promise is a good consideration for a promise. And it is so previous to performance and without performance :" 1 Parsons on Contracts 373.

We submit, therefore, that the answer of the court below to the plaintiff's second point was erroneous, and that the judgment should be reversed.

*J. B. Amwake* and *O. J. Dickey*, for defendant in error.—The plaintiff in his points to the court below requested them to charge the jury that the defendant had no right to erect a gate across the private way of the plaintiff, without his consent, at any point where none existed before, if such erection subjected the plaintiff to inconvenience, which the court answered in the affirmative. The evidence in the court below, however, fully established the fact, that when the defendant moved the gate to the bank of the creek, in 1863, he put it precisely where it stood before for upwards of forty years.

The plaintiff finds fault with the court below in answering his second point, and contends that the casual and loose conversation between the plaintiff and Ephraim Erb in reference to the gate in 1846, constituted an agreement between them, based upon a good and sufficient agreement between them that can be enforced either in law or equity, and therefore the defendant had no right to move the gate back to where it originally stood without the consent of the plaintiff. He compares this case to that of consentable boundaries, where compromises and agreements to settle their disputes are encouraged by courts. There is a wide difference in the principles applied to consentable lines, and the agreement here, if any. In disputed lines or boundaries between the parties, where the rights are in dispute and in doubt, an agreement upon a line between them binds the parties, and can be enforced in law; out

[Erb *v.* Erb.]

of the doubtfulness of the right springs the consideration which binds the parties.

In this case, at the time the conversation was had between the plaintiff and Ephraim Erb in reference to the gate, there was no dispute between them concerning it, no doubtful facts in the case ; it did not constitute a division line or boundary between them ; it bears no analogy to consentable lines ; it is not governed by the same principles. But if the court should be of opinion that the conversation between the plaintiff and Ephraim Erb constituted an agreement, could it be enforced ? was there a good and sufficient consideration to support a promise, and if so, was it not upon condition that the plaintiff should keep the gate (in repair), and it should remain where it was ? The court fairly submitted the facts to the jury, with instructions, that if the plaintiff and Ephraim Erb agreed upon a sufficient consideration that the gate should remain at a certain point, it would be binding. So far as this part of the judge's answer goes, the plaintiff has no reason to find fault. But the court proceed : " but unless Jacob Erb actually consummated his agreement (if you believe that there was an agreement between them), and kept the gate in repair, the mere promise on his part to 'keep the gate in repair would not be sufficient to make the contract binding." We think that also this part of the judge's answer is correct. Is it not the duty of the plaintiff, before he seeks to enforce the contract against the defendant, to show that he kept the gate in repair, or offered to keep it in repair ? In the absence of such proof, he cannot enforce the agreement against him.

The opinion of the court was delivered, June 29th 1865, by

AGNEW, J.—The court below seem to have fallen into error, in qualifying the answer to the plaintiff's second point. There was no evidence that the gate was out of repair when John Erb removed it to the place from which his father had moved it in 1845 ; or that Jacob Erb had at any time refused to keep it in repair. The plaintiff was therefore entitled to an unqualified answer upon the effect of the agreement as to keeping the gate in the location to which it had been thus removed. It must be remembered that there was no dispute about the right of way, or the right to have that way crossed by the gate ; it was a mere question of location upon the way. Ephraim Erb, the former owner and father of John, had himself moved the gate in 1845, and there it had remained ever since, with the acquiescence of Jacob, until John undertook to move it back in August 1863 without his consent. Without the proof of the agreement between Jacob and Ephraim Erb, testified to by Levi Miller, a jury would have inferred from the use of the gate by Jacob for eighteen or nineteen years, that he had consented to its removal by Ephraim in 1845, and thus

[Erb *v.* Erb.]

established its location by common consent. But Miller's testimony proves an express agreement between Ephraim and Jacob that the former would keep the gate at the race in repair, and the latter the gate in dispute, to which Jacob agreed on the express condition that this gate should remain where it then was. Now, in a mere question of location, where no title is in dispute, surely after such conduct on part of Ephraim himself, he would not, without proof of a failure on part of Jacob to live up to his agreement, be permitted to put back the gate to an inconvenient location, compelling Jacob to get out into the stream or the mud left by it, every time he had to open the gate. The removal in 1845 had been caused by the encroachment of the stream, by washing away the adjacent banks. It will be observed, that this is not an action founded directly on the contract, where the plaintiff would be compelled to show his own performance or readiness to perform before he could ask a verdict in his favour; but it is for the injury caused by the illegal removal of the gate to an inconvenient location, detracting from the utility of the right of way. It was the defendant who had had to set up his right of removal; and to do this he must show the plaintiff to be in fault in not keeping the gate in repair. The court therefore fell into error in charging the jury, that the plaintiff must precede his right of recovery by proof of repairs kept up. The location and actual existence of the gate, where it stood by consent for nearly twenty years, and the mutual agreement for repair, were *primâ facie* sufficient for the plaintiff, till a cause of removal was shown.

Judgment reversed, and a *venire de novo* awarded.